UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**SHAMARA BOINES**

    Plaintiff,

    -vs-

**JARS HOLDINGS, LLC,**
**d/b/a JARS CANNABIS** and
**RAYMOND ABRO**, jointly and severally,
    Defendants.

Case No.

Hon.

---

Darcie R. Brault (P43864)
McKnight, Canzano, Smith,
Radtke & Brault, P.C.
Attorneys for Plaintiff
423 N. Main St., Suite 200
Royal Oak, MI 48220
(248) 354-9650
dbrault@michworkerlaw.com

---

## **COMPLAINT AND JURY DEMAND**

Plaintiff, SHAMARA BOINES, by and through her counsel, McKnight, Canzano, Smith, Radtke & Brault, P.C., complains as follows against Defendants:

### *Jurisdiction and Venue*

1.    This is an action brought to redress race and gender/sexual orientation discrimination and harassment under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e, *et seq*, and the Elliott-Larsen Civil Rights Act ("ELCRA"), MCL § 37.2101, *et seq,* as well as for violation of the

COVID-19 Employee Rights Act, MCL 419.401 *et seq* ("CERA")*,* and the public policy of the State of Michigan.

2.     Plaintiff BOINES is an individual, residing in the County of Oakland, State of Michigan.

3.     At all material times, Defendant JARS HOLDINGS, LLC, d/b/a JARS CANNABIS ("JARS") was a domestic, for-profit corporation, conducting business throughout the County of Wayne and the State of Michigan.

4.     At all material times, Defendant RAYMOND ABRO ("ABRO") conducted business throughout the County of Wayne and the State of Michigan.

5.     Under 28 U.S.C. § 1331, this Court has original jurisdiction to hear this Complaint and to adjudicate the stated claims.

6.     This Court has supplemental jurisdiction of the Michigan state law claims under 28 U.S.C. § 1367.

7.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendant operates its facilities and because all of the events giving rise to the Plaintiffs' claims occurred in this district.

### General Allegations

8.     BOINES is an African American female.

9.     JARS operates multiple marijuana dispensaries in the metropolitan Detroit area as part of an integrated and/or joint employer.

2

10.     Defendant ABRO was JARS' Chief Operating Officer and acted as BOINES' direct supervisor.

11.     Marijuana dispensaries are required to be licensed by the State of Michigan and are regulated by the State of Michigan.

12.     Defendant ABRO hired BOINES as a legal Compliance Officer in March 2020.

13.     BOINES was qualified to act as Compliance Officer, with regulatory and licensing experience prior to her employment with JARS.

14.     At all material times, BOINES performed her job as Compliance Officer in a satisfactory manner.

15.     Throughout BOINES' employment with JARS, ABRO made offensive racist, sexist and homophobic remarks.

16.     ABRO referred to homosexuals using discriminatory slurs, including "faggot."

17.     ABRO frequently made statements indicating that he did not like homosexuals or anyone that was not "straight."

18.     ABRO pushed back when BOINES sought to include language barring sexual orientation discrimination in the JARS Employee Handbook, stating, "I don't like that lifestyle."

19.     ABRO referred to an openly gay employee as "that faggot motherfucker."

20.     ABRO stated, "I'm going to hire five or six of those faggot motherfuckers so people don't think I'm homophobic."

21.     ABRO constantly inquired about BOINES relationship status, in a transparent attempt to determine her sexual orientation.

22.     In April of 2020, ABRO referred to one of the African American male security staff as a "nigga" on a meeting over Zoom.

23.     ABRO used the N-word on his public social media.

24.     At a staff meeting including BOINES on June 19, 2020, ABRO stated, "Black Lives Matter ruined it for black people" all the while making eye contact with BOINES.

25.     ABRO commented on the skin color of BOINES' nieces.

26.     ABRO told BOINES, "I'm not racist. I hired you, didn't I?"

27.     ABRO also repeatedly used epithets derogatory to women.

28.     ABRO referred to Michigan's Governor, Gretchen Whitmer, "stupid," a "ho" and a "whore."

29.     ABRO told BOINES he would not watch any movies which featured a female in charge.

30.     Almost immediately after BOINES was hired, the COVID-19 pandemic caused global disruptions in business.

31.     On March 10, 2020, the Governor of the State of Michigan issued Executive Order 2020-4, declaring a state of emergency in response to the COVID-19 pandemic.

32.     On April 1, 2020 the Governor expanded her previous Executive Order, declaring both a state of emergency and a state of disaster across the State of Michigan, in Executive Order 2020-33.

33.     The Executive Orders were based upon section 1 of article 5 of the Michigan Constitution of 1963; the Emergency Management Act, MCL 30.401 *et seq* ("EMA"); and the Emergency Powers of the Governor Act of 1945, MCL 10.31 *et seq*.

34.     The Michigan legislature adopted a concurrent resolution to extend the states of emergency and disaster declared under the Emergency Management Act until April 30, 2020.

35.     Pursuant to the EMA and the Michigan Constitution, on March 23, 2020, Governor Whitmer issued a "Stay Home, Stay Safe" Executive Order which required persons to shelter in place and provided for various other requirements designed to limit and prevent the spread of the novel COVID19 virus, Executive Order 2020-21.

5

36.    The "Stay Home, Stay Safe" order was effective March 24, 2020 and was extended in subsequent orders until June 1, 2020.

37.    On April 24, 2020, Governor Whitmer issued Executive Order 2020-59, the Order continued the "Stay Home, Stay Safe" order, providing narrow exceptions for businesses performing outdoor activities and requiring certain safety precautions for businesses allowed to resume outdoor business activities.

38.    On May 18, 2020, Governor Whitmer issued Executive Directive 2020-6 that directs each state agency to enforce workplace health and safety standards and take enforcement actions to ensure compliance. The Directive required, in pertinent part, that:

> 6. Retail stores that are open for in-store sales must:
> …
> b. Establish lines to regulate entry in accordance with subsection (c) of this section, with markings for patrons to enable them to stand at least six feet apart from one another while waiting. Stores should also explore alternatives to lines, including by allowing customers to wait in their cars for a text message or phone call, to enable social distancing and to accommodate seniors and those with disabilities.
>
> c. Adhere to the following restrictions:
>
> > 1. For stores of less than 50,000 square feet of customer floor space, must limit the number of people in the store (including employees) to 25% of the total occupancy limits established by the State Fire Marshal or a local fire marshal. Stores of more than 50,000 square feet must:

> A. Limit the number of customers in the store at one time (excluding employees) to 4 people per 1,000 square feet of customer floor space.
>
> …
>
> d. Post signs at store entrance(s) instructing customers of their legal obligation to wear a face covering when inside the store.
>
> e. Post signs at store entrance(s) informing customers not to enter if they are or have recently been sick.
>
> …
>
> 11. Any business or operation that violates the rules in sections 1 through 9 has failed to provide a place of employment that is free from recognized hazards that are causing, or are likely to cause, death or serious physical harm to an employee, within the meaning of the Michigan Occupational Safety and Health Act, MCL 408.1011.

39.     On May 21, 2020, the Michigan Marijuana Regulatory Agency ("MRA"), released an Advisory Bulletin titled "Licensed Marijuana Operations Under COVID-19 Executive Orders," outlining the requirements for licensed facilities to operate in accordance with Executive Directive 2020-06.

40.     On June 5, 2020, the Department of Health and Human Services ("DHHS") released an Order pursuant to MCL 333.2253 that incorporated Executive Orders 2020-110, 2020-114, 2020-115.

41.     Early on in the COVID-19 pandemic, BOINES observed that at multiple facilities, JARS was not limiting the number of customers allowed in their facilities, not requiring or even encouraging customers to socially distance, and not

requiring customers to wear masks to enter, all in violation of Executive Directive 2020-06.

42.    BOINES raised her concerns with ABRO on multiple occasions.

43.    ABRO responded that he refused to comply with the Executive Orders and Department of Health and Human Services Directives, as he did not believe the restrictions were necessary.

44.    ABRO vehemently disagreed with Governor Whitmer's Executive Orders and Directives, calling the Governor "stupid," "a ho," and "a whore" for issuing them.

45.    ABRO was angry with BOINES when she raised compliance issues and became upset if she corrected him when he misstated the law.

46.    After BOINES reported the health violations related to COVID-19 to ABRO, ABRO asked BOINES not to speak at staff meetings.

47.    On July 10, 2020, Governor Whitmer issued Executive Order 2020-147, which "require[d] any business that is open to the public to refuse entry or service to people who refuse to wear a face covering," unless certain exceptions applied.

48.    On July 15, 2020, BOINES was approached by JARS' Head of Marketing, who informed BOINES that ABRO wished to post a sign at the

entrances of JARS locations in order to inform customers of their obligation to wear a mask, which read:

**ATTENTION**:

GOVENER GRETCHEN WHITMER HAS ORDERED THAT ALL CUSTOMERS MUST WEAR A MASK WHEN ENTERING THIS FACILITY.

IF YOU HAVE A MEDICAL CONDITION THAT PREVENTS YOU FROM WEARING A MASK YOU DON'T NEED TO WEAR ONE.

IF YOU ARE NOT WEARING ONE, WE WILL ASSUME THIS IS THE CASE. DUE TO HIPPAA, AND THE FOURTH AMENDMENT WE WILL NOT ASK YOU ABOUT YOUR CONDITION.

THANK YOU FOR YOUR BUSINESS AND WE RESPECT THE RIGHTS OF ALL.

49.     Streets asked BOINES whether the sign would be in compliance with the Governor's COVID-19 Executive Orders and Directives.

50.     BOINES informed Streets that she would not approve such a sign, that it would not be compliant with COVID-19 Executive Orders, Directives, and Rules and that posting such a sign could subject JARS to fines and other penalties.

51.     On July 15, 2020, BOINES reiterated to ABRO and Streets, directly, that the proposed signage was not approved for posting, was not compliant with the law and could subject JARS to fines and other penalties.

9

52.     Also on July 15, 2020, BOINES observed that the chairs in the lobby of a facility were positioned to be six feet apart and that ABRO moved the chairs back into their original positions so that they no were no longer positioned to comply with the social distancing rules.

53.     On July 16, 2020, ABRO terminated BOINES' employment with JARS.

54.     ABRO informed BOINES that JARS did not need a Compliance Officer and that her position was eliminated.

55.     Shortly thereafter, JARS posted on various job hiring websites that it was seeking to hire a Compliance Officer.

56.     BOINES filed a timely charge with the Equal Employment Opportunity Commission which issued a Right to Sue letter on September 28, 2021.

### *Count 1: Violation of Title VII of the Civil Rights Act (Race)*

57.     Plaintiff incorporates by reference paragraphs 1 through 56 as though fully set forth herein.

58.     Title VII applies to employers "engaged in an industry affecting commerce who [have] fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and includes an agent of such [an employer]." 42 U.S.C. §2000e(b).

59.     JARS is an employer within the meaning of Title VII because it employs 15 or more employees or because, as an integrated and/or joint employer it employs 15 or more employees.

60.     Title VII prohibits employment discrimination on the basis of race.

61.     JARS violated Title VII by discriminating against Plaintiff because of her race by:

     a.     Considering race in the decision to hire BOINES;

     b.     Subjecting BOINES to derogatory comments regarding race;

     c.     Creating a hostile work environment on the basis of race;

     d.     Treating BOINES differently because of her race;

     e.     Terminating BOINES; and

     f.     Other acts of race discrimination yet to be determined.

62.     The above-described violations of Title VII were intentional or in reckless disregard of BOINES' federally protected rights.

63.     As a direct and proximate result of the aforementioned violations, BOINES has suffered damages, including lost compensation, past and future, emotional distress, pain and suffering, harm to her reputation and other non-economic injuries, payment of attorneys' fees and costs and other damages, yet to be determined.

11

WHEREFORE Plaintiff BOINES respectfully requests this Court enter a judgment in her favor and against Defendant JARS as follows:

a. Economic damages based on her lost wages and fringe benefits, both past and future;

b. Non-economic damages for injuries such as emotional distress, pain and suffering, harm to reputation, and other consequential injuries;

c. Punitive damages;

d. Attorney fees and costs;

e. Interest; and

f. Such other relief as may be deemed appropriate at the time of final judgment.

### Count 2: Violations of Michigan's ELCRA (Race)

64. Plaintiff incorporates by reference paragraphs 1 through 63 as though fully set forth herein.

65. Under Section 201(a) of ELCRA, MCL § 37.2201(a), an employer is a person "who has 1 or more employees, and includes an agent of that person."

66. Defendant JARS is an employer within the meaning of the ELCRA.

67. Defendant ABRO is an agent of JARS and an employer within the meaning of the ELCRA.

68. Section 202(1)(a) of ELCRA, MCL § 37.2202(1)(a), makes it unlawful for an employer to "discharge, or otherwise discriminate against an

individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of . . . race …"

69.     Defendants discriminated against Plaintiff because of her race by:

    a.    Considering race in the decision to hire BOINES;

    b.    Subjecting BOINES to derogatory comments regarding race;

    c.    Creating a hostile work environment on the basis of race;

    d.    Treating BOINES differently because of her race;

    e.    Terminating BOINES; and

    f.    Other acts of race discrimination yet to be determined.

70.     As a direct and proximate result of the aforementioned violations, BOINES has suffered damages, including lost compensation, past and future, emotional distress, pain and suffering, harm to her reputation and other non-economic injuries, payment of attorneys' fees and costs and other damages, yet to be determined.

WHEREFORE, Plaintiff prays for Judgment against Defendants JARS and ABRO for:

    a.    Economic damages based on her lost wages and fringe benefits, both past and future;

    b.    Non-economic damages for injuries such as emotional distress, pain and suffering, harm to reputation, and other consequential injuries;

    c.    Attorney fees and costs;

d.     Interest, and

e.     Such other relief as may be deemed appropriate at the time of final judgment.

### Count 3: Violation of Title VII of the Civil Rights Act
### (Gender/Sexual Orientation)

71.     Plaintiff incorporates by reference paragraphs 1 through 70 as fully set forth herein.

72.     JARS is an employer within the meaning of Title VII because it employs 15 or more employees or because, as an integrated and/or joint employer it employs 15 or more employees.

73.     Title VII prohibits discrimination on the basis of gender and sexual orientation in employment.

74.     JARS violated Title VII by discriminating against Plaintiff because of her gender by:

a.     Subjecting BOINES to derogatory comments regarding women and sexual orientation;

b.     Creating a hostile work environment on the basis of gender and sexual orientation;

c.     Treating BOINES differently because of her gender;

d.     Terminating BOINES; and

e.     Other acts of gender discrimination yet to be determined.

75.     The above-described violations of Title VII were intentional or in reckless disregard of BOINES' federally protected rights.

76.     As a direct and proximate result of the aforementioned violations, BOINES has suffered damages, including lost compensation, past and future, emotional distress, pain and suffering, harm to her reputation and other non-economic injuries, payment of attorneys' fees and costs and other damages, yet to be determined.

WHEREFORE Plaintiff BOINES respectfully requests this Court enter a judgment in her favor and against Defendant JARS as follows:

   a.   Economic damages based on her lost wages and fringe benefits, both past and future;

   b.   Non-economic damages for injuries such as emotional distress, pain and suffering, harm to reputation, and other consequential injuries;

   c.   Punitive damages;

   d.   Attorney fees and costs;

   e.   Interest; and

   f.   Such other relief as may be deemed appropriate at the time of final judgment.

### Count 4: Violations of ELCRA
### (Gender/Sexual Orientation)

77.     Plaintiff incorporates by reference paragraphs 1 through 76 as fully set forth herein.

78.     As stated above, Defendants JARS and ABRO are both employers within the meaning of the ELCRA.

79.     Section 202(1)(a) of ELCRA, MCL § 37.2202(1)(a), makes it unlawful for an employer to "discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of . . . sex…"

80.     Defendant violated the ELCRA by discriminating against Plaintiff because of her sex by:

      a.     Subjecting BOINES to derogatory comments regarding women and sexual orientation;

      b.     Creating a hostile work environment on the basis of gender and sexual orientation;

      c.     Treating BOINES differently because of her gender;

      d.     Terminating BOINES; and

      e.     Other acts of gender discrimination yet to be determined.

81.     As a direct and proximate result of the aforementioned violations, BOINES has suffered damages, including lost compensation, past and future, emotional distress, pain and suffering, harm to her reputation and other non-

economic injuries, payment of attorneys' fees and costs and other damages, yet to

be determined.

WHEREFORE, Plaintiff prays for Judgment against Defendants JARS and

ABRO for:

      a. Economic damages based on her lost wages and fringe benefits, both past and future;

      b. Non-economic damages for injuries such as emotional distress, pain and suffering, harm to reputation, and other consequential injuries;

      c. Attorney fees and costs;

      d. Interest, and

      e. Such other relief as may be deemed appropriate at the time of final judgment.

### *Count 5: Violation of the CERA,*
### *MCL 419.401 et seq*

82.    Plaintiff incorporates the preceding paragraphs 1 through 81 as though

fully stated herein.

83.    The COVID-19 Employee Rights Act, MCL 419.401 *et seq*.

("CERA"), makes it a violation for an employer to "discharge, discipline, or

otherwise retaliate against an employee who does any of the following: … (b)

Opposes a violation of this act" or "(c) Reports health violations related to

COVID-19.

17

84. By advising JARS that it was not in compliance with the COVID health regulations, BOINES both opposed violation of the CERA and reported health violations related to COVID-19.

85. JARS terminated BOINES' employment, because of her protected activity in violation of MCL 419.403(1)(b) and (c).

86. As a direct and proximate result of the aforementioned violations, BOINES has suffered damages, including lost compensation, past and future, emotional distress, pain and suffering, harm to her reputation and other non-economic injuries, payment of attorneys' fees and costs and other damages, yet to be determined.

WHEREFORE, Plaintiff prays for Judgment against Defendants JARS for:

a. Economic damages based on her lost wages and fringe benefits, both past and future;

b. Non-economic damages for injuries such as emotional distress, pain and suffering, harm to reputation, and other consequential injuries;

c. Attorney fees and costs;

d. Interest, and

e. Such other relief as may be deemed appropriate at the time of final judgment.

### *Count 6: Wrongful Termination in*
### *Violation of the Public Policy of the State of Michigan*

87.     Plaintiff incorporates the preceding paragraphs 1 through 86 as though fully stated herein.

88.     Michigan courts generally allow an employer to fire an employee for any reason or no reason at all. However, a reason for termination cannot violate public policy.

89.     A termination violates public policy if (1) the employee is discharged in violation of an explicit legislative statement prohibiting discharge of employees who act in accordance with a statutory right or duty; (2) the employee is discharged for the failure or refusal to violate the law in the course of employment; or (3) the employee is discharged for exercising a right conferred by a well-established legislative enactment.

90.     The Governor's Executive Orders and authorizing laws: Section 1 of article 5 of the Michigan Constitution of 1963; the EMA, and the Emergency Powers of the Governor Act of 1945, MCL 10.31 *et seq* and the directives of the Department of Health and Human Services, all constitute the express public policy of the State of Michigan.

91.     JARS's actions and proposed actions violated the Governor's COVID-19 Executive Orders and Directives, and the directives of the Department of Health and Human Services, including but not limited to:

a.   JARS failed to limit the numbers of customers allowed inside JARS locations, and, in doing so, failed to provide space for customers to socially distance.

b.   JARS refused to enforce mask-wearing.

c.   JARS proposed to post a sign stating that the business would assume that anyone not wearing a mask had a medical condition, in violation of Executive Order 2020-153.

92.   BOINES engaged in protected activity when she advised that Defendants were not in compliance with with the Executive Orders and State of Michigan Health and Human Services guidance on safeguards to protect Michigan's workers from COVID-19. Specifically, she advised that:

a.   Defendants failed to limit occupancy sufficient to promote social distancing;

b.   Defendants failed to observe and/or enforce social distancing when possible;

c.   Defendants failed to require patrons to wear a face mask; and

d.   Defendants sought to post a mask notice that violated the Governor's Executive Orders.

93.   Because BOINES sought compliance by complaining of non-compliance and requesting specific acts of compliance, refused to authorize non-compliant policies, and refused to approve a posting that violated the mask policies, Defendants took adverse action against her, including but not limited to:

a.   Treating her reports and requests with hostility;

b.   Terminating BOINES; and

  c.  Other acts of retaliation yet to be discovered.

94.  As a direct and proximate result of these adverse actions, BOINES has suffered damages including, but not limited to:

  a.  Loss of wages and earning potential,

  b.  Loss of employee benefits,

  c.  Loss of promotional opportunities,

  d.  Loss of professional esteem and consequent damage to Plaintiff's professional career,

  e.  Embarrassment, humiliation, inconvenience, mental anguish, indignity, outrage and disappointment, and

  f.  Other damages to be determined.

WHEREFORE, Plaintiff prays for Judgment against Defendants JARS for whatever amount the Court or Jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, together with interest, costs and attorney fees and such other relief as may be deemed appropriate at the time of

final judgment.

Respectfully submitted,

McKNIGHT, CANZANO, SMITH
RADTKE & BRAULT, P.C.

By:   /s/ Darcie R. Brault

    Darcie R. Brault (P43864)
    Attorneys for Plaintiff
    423 N. Main St., Suite 200
    Royal Oak, MI  48067
    (248) 354-9650

December 27, 2021    dbrault@michworkerlaw.com

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Respectfully submitted,

McKNIGHT, CANZANO, SMITH
RADTKE & BRAULT, P.C.

By:   /s/ Darcie R. Brault

    Darcie R. Brault (P43864)
    Attorneys for Plaintiff
    423 N. Main St., Suite 200
    Royal Oak, MI  48067
    (248) 354-9650
    dbrault@michworkerlaw.com

Dated: December 27, 2021