UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAMARA BOINES,

    Plaintiff,

v.

JARS CANNABIS, LLC, RAYMOND
ABRO, and JARS HOLDINGS, LLC
d/b/a JARS CANNABIS,

    Defendants.
_____/

Case No. 2:21-cv-13010
District Judge George Caram Steeh
Magistrate Judge Kimberly G. Altman

## ORDER FOLLOWING IN-CAMERA REVIEW OF DOCUMENTS TO WHICH DEFENDANT ASSERTS PRIVILEGE

I.    Introduction

This is an employment case. Plaintiff Shamara Boines (Boines) is suing Defendants JARS Cannabis, LLC; JARS Holdings, LLC d/b/a JARS Cannabis (JARS); and Raymond Abro (Abro) for race, sex, and sexual orientation discrimination under both federal and state law as well as for violation of a state statute called the COVID-19 Employee Rights Act and state public policy. *See* ECF No. 1. Under 28 U.S.C. § 636(b)(1)(A), non-dispositive pretrial matters were referred to the undersigned. (ECF No. 23).

On December 21, 2022, the undersigned held a hearing on various motions

1

to compel, (ECF Nos. 25, 29, 32), during which she agreed to review in camera certain emails and attachments that JARS maintains are protected by attorney-client privilege. JARS submitted a flash drive containing the relevant materials on January 4, 2023. The Court has now reviewed the submitted emails and attachments and sets forth its findings below.

## II. Background

The following facts are gleaned from the complaint.

Boines is an African American woman who was hired by JARS in March 2020 as a legal compliance officer. (ECF No. 1, PageID.2-3). "JARS operates multiple marijuana dispensaries in the metropolitan Detroit area" and Abro was JARS' Chief Operating Officer and Boines' direct supervisor. (*Id.*).

Abro often "made offensive racist, sexist and homophobic remarks" throughout Boines' period of employment. (*Id.*, ECF No. 3). These remarks included the use of slurs like " 'faggot' " and the "N-word" as well as the use of "epithets derogatory to women." (*Id.*, PageID.3-4).

Shortly after Boines was hired, Michigan Governor Gretchen Whitmer (Governor Whitmer) "declar[ed] a state of emergency in response to the COVID-19 pandemic," which was followed by the issuance of numerous executive orders aimed at restricting the spread of COVID-19. (*Id.*, PageID.5-7). These executive orders severely restricted the operation of most businesses, including marijuana

dispensaries. (*Id*.).

Boines observed violations of Governor Whitmer's executive orders at multiple JARS' dispensaries. (*Id*., PageID.7-8). These violations included failures to limit the number of customers permitted inside a dispensary at the same time as well as failures to require social distancing and masking. (*Id*.). Boines reported her observations to Abro "on multiple occasions." (*Id*., PageID.8). Abro responded that he was intentionally refusing to comply with the State's restrictions and called Governor Whitmer derogatory epithets. (*Id*.). Abro became "angry with [Boines] when she raised compliance issues and became upset if she corrected him when he misstated the law." (*Id*., PageID.8).

On July 15, 2020, Boines informed Abro that the language he wanted to use on a sign would not be compliant with Governor Whitmer's recent executive order requiring businesses to refuse entry to individuals not wearing masks. (*Id*., PageID.8-9). On the same date, Boines saw that the chairs in one dispensary had been moved closer together in violation of state social distancing requirements. (*Id*., PageID.10). Abro terminated Boines the next day, informing her that JARS no longer needed a compliance officer and was therefore eliminating her position. (*Id*.).

Shortly after her termination, Boines saw posts "on various job hiring websites" that JARS was looking for a compliance officer. (*Id*.).

III.     Legal Standard

Attorney-client privilege is intended "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice[,]" *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981), and it "protects from disclosure confidential communications between a lawyer and his client in matters that relate to the legal interests of society and the client[,]" *Ross v. City of Memphis*, 423 F.3d 596, 600 (6th Cir. 2005). Determining whether the "privilege applies to a given situation is a mixed question of law and fact." *Id*. When making the determination, a court considers the following factors:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.

*Reed v. Baxter*, 134 F.3d 351, 355-356 (6th Cir. 1998).

"The burden of establishing the attorney-client privilege rests with the person asserting it." *Doe v. Hamilton Cnty. Bd. of Educ.*, No. 1:16-cv-373, 2018 WL 542971, at *2 (E.D. Tenn. Jan. 24, 2018). When the client is a corporation, generally "the privilege belongs to the corporation and may be asserted or waived only by those with authority to do so-typically the officers and directors." *Wrench LLC v. Taco Bell*, 212 F.R.D. 514, 517 (W.D. Mich. 2002) (citing *United States v.*

*Chen*, 99 F.3d 1495, 1502 (9th Cir.1996)).

The privilege applies "[w]here legal advice of any kind is sought." *Reed*, 134 F.3d at 355. " 'Fundamentally, legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct.' " *Alomari v. Ohio Dep't of Pub. Safety*, 626 F. App'x 558, 570 (6th Cir. 2015) (quoting *In re Cnty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007)). Importantly, "the privilege protects communications necessary to *obtain* legal advice." *Alomari*, 626 F. App'x at 571 (cleaned up) (emphasis in original). However, "the privilege is narrowly construed because it reduces the amount of information discoverable during the course of a lawsuit." *United States v. Collis*, 128 F.3d 313, 320 (6th Cir. 1997).

Moreover, it is "generally accepted that communications between an attorney and client of primarily a business nature are outside the scope of the privilege." *Glazer v. Chase Home Fin., LLC*, No. 1:09-cv-1262, 2015 WL 12733394, at *4 (N.D. Ohio Aug. 5, 2015). "[T]he privilege does not permit an attorney to conduct his client's business affairs in secret." *In re Grand Jury Subpoenas*, 803 F.2d 493 (9th Cir. 1986). It "only applies if the lawyer is providing legal advice or services, and [the attorney-client privilege] will not protect disclosure of non-legal communications where the attorney acts as a business or economic advisor." *Edwards v. Whitaker*, 868 F. Supp. 226, 228

5

(M.D. Tenn. 1994) (internal quotation marks and citation omitted).

"When a communication involves both legal and non-legal matters, we 'consider whether the predominant purpose of the communication is to render or solicit legal advice.' " *Alomari*, 626 F. App'x at 570 (quoting *In re Cnty. of Erie*, 473 F.3d at 420). "This predominant purpose 'should be assessed dynamically and in light of the advice being sought or rendered, as well as the relationship between advice that can be rendered only by consulting the legal authorities and advice that can be given by a non-lawyer.' " *Alomari*, 626 F. App'x at 570 (quoting *In re Cnty. of Erie*, 473 F.3d at 420-421); *see also Harrison v. Proctor & Gamble Distrib., LLC*, No. 1:15-cv-514, 2016 WL 11642223, at *2 (S.D. Ohio Nov. 10, 2016) ("Whether attorney-client privilege applies is based not on the subject of discussion but whether the attorney in question was providing legal advice or serving in some other business or administrative capacity.").

## IV. Discussion

The disputed materials in this case consist almost entirely of emails and attachments to those emails exchanged between Boines and two attorneys. The attorneys, Heather Jackson (Jackson) and John Kenny (Kenny), both work for an Illinois law firm and appear to have served as outside counsel for JARS during the relevant period. Defense counsel submitted the emails and attachments on a flash drive in both native format and Portable Document Format (PDF). The PDF

containing all of the emails and attachments is 634 pages long.

After reviewing the disputed materials, the Court finds that they are protected by attorney-client privilege and thus not discoverable under Federal Rule of Civil Procedure 26(b)(1). The emails at issue were exchanged between Boines in her role as a legal compliance officer and Jackson and Kenny in their role as outside counsel.

Boines' emails to Jackson and Kenny are almost exclusively composed of questions from Boines to the attorneys related to employment law or asking them to review employment related documents such as employee manuals and other documents related to JARS' employment policies in their capacities as attorneys. In turn, Jackson's and Kenny's emails are almost exclusively composed of them answering Boines' questions and their notes after completing reviews of documents.

The attachments are almost all documents drafted either by Boines or someone else affiliated with JARS concerning legal matters that were then sent to Jackson and/or Kenny for their review. As part of their review process, Jackson and Kenny would redline the documents and send Boines both their redlined and clean drafts. The redlined versions of the documents show that Jackson and Kenny were reviewing the documents in their capacities as attorneys and providing legal advice regarding the documents. For example, many of their comments explain

the applicability of various federal and state statutes.

Overall, a review of the emails and attachments submitted by JARS for in-camera review demonstrates that JARS properly declined to produce them during the discovery process. Boines exchanged emails with Jackson and Kenny because she was seeking their legal advice on behalf of her employer (JARS). Jackson and Kenny provided that advice, sometimes in the body of an email and at other times through track changes and comments during their review of documents. Because all of the disputed materials involve communications necessary to obtain legal advice and the resulting legal advice, JARS may properly continue to assert attorney-client privilege to shield the emails and attachments from discovery by Boines.

V. Conclusion

For the reasons stated above, the Court finds that the emails and attachments submitted to it for in-camera review are all subject to the protection of attorney-client privilege.[1] As such, they are not subject to disclosure.

SO ORDERED.

Dated: March 10, 2023　　　　　　　　　　s/Kimberly G. Altman
Detroit, Michigan　　　　　　　　　　　　KIMBERLY G. ALTMAN
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

---

[1] It is also not entirely clear how any of the communications and associated documents are arguably relevant to Boines' claims.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 10, 2023.

s/Carolyn Ciesla
CAROLYN CIESLA
Case Manager
